UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ALFREDO RIOS-GARCIA,

Petitioner,

v.

BRUCE SCOTT, et al.,

Respondents.

Case No. 2:26-cv-02541-TLF

ORDER GRANTING HABEAS PETITION IN PART

Petitioner, Alfredo Rios-Garcia is a native and citizen of Mexico. Dkt. 1 at 10 (petition); Dkt. 20 at 1 (deportation officer ("DO") declaration). He entered the United States in 2003 and has lived in the United States since then.[1] Dkt. 1 at 10; *see also* Dkt. 20 at 1. On June 15, 2026, respondents detained petitioner. Dkt. 1 at 10; Dkt. 20 at 1-2; *see also* Dkt. 1-2 at 6 (Notice to Appear). He now petitions for a writ of habeas corpus and moves for a temporary restraining order ("TRO"), both of which seek similar relief. Dkts. 1-2.

[1] However, petitioner's Notice to Appear (dated June 17, 2026) states he "arrived in the United States . . . on or about July 1, 1990 . . ." Dkt. 1-2 at 6.

Petitioner seeks release and raises two claims. First, he asserts a substantive due process claim, arguing respondents failed to provide him constitutionally adequate medical care during his detention. *E.g.*, Dkt. 1 at 16-17; Dkt. 2 at 3, 5. Second, he asserts a procedural due process claim under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *E.g.* Dkt. 1 at 17-18.

The parties unanimously consent to the jurisdiction of a Magistrate Judge. Dkt. 4. For the reasons below, the petition for a writ of habeas corpus (Dkt. 1) is **GRANTED IN PART**. Respondents shall release petitioner **within 24 hours** of the filing of this Order. Due to petitioner's ordered release, his TRO motion (Dkt. 2) is **DENIED as moot**.

## I. BACKGROUND

Petitioner is a native and citizen of Mexico. Dkt. 1 at 10; Dkt. 20 at 1. He states he entered the United States in 2003 without inspection. Dkt. 1 at 10; *see also* Dkt. 20 at 1. He married, the couple have four children, and petitioner has had a long-standing employment history. Dkt. 1 at 10. There is no allegation petitioner has any criminal history.

On June 15, 2026, respondents detained petitioner during a "targeted operation in Colville, WA." Dkt. 20 at 1-2; Dkt. 1 at 10. Respondents' Notice to Appear designated petitioner as "an alien present in the United States who has not been admitted or paroled." Dkt. 1-2 at 6; *see also* Dkt. 20 at 2. Petitioner was ultimately transferred to NWIPC. Dkt. 1 at 10; Dkt. 20 at 2. On July 17, 2026, petitioner filed his habeas petition and TRO motion. Dkts. 1-2.

On July 23, 2026, an IJ denied petitioner's bond request, asserting a lack of jurisdiction under *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). Dkt. 15-1. That

same day, the IJ granted "pre-conclusion voluntary departure" with a deadline of August 24, 2026. Dkt. 15-2. On July 27, 2026, respondents filed a Notice of Imminent Removal before this Court. Dkt. 12.

In an August 3, 2023 Joint Status Report ("JSR"), the parties explained petitioner had moved for the Immigration Court to withdraw acceptance of voluntary departure and to reopen his immigration proceedings.[2] Dkt. 17 at 1-2. The parties also state that because of these motions "the grant of voluntary departure was automatically terminated, and the alternate order of removal took effect immediately." Dkt. 17 at 2 (citing 8 C.F.R. § 1240.26(b)(3)(iii); 8 C.F.R. § 1240.26(e)(1)).

Respondents later explained that "[o]n August 6, 2026, the Immigration Judge granted both the Motion for Stay of Removal and the Motion to Reopen and Reconsider." Dkt. 19 at 3. Petitioner's master hearing is now scheduled for September 10, 2026. Dkt. 22.

## II. DISCUSSION

Due to the reopening of petitioner's immigration proceedings, it is undisputed petitioner is now detained under 8 U.S.C. § 1226(a). *See* Dkt. 19 at 2-4 (respondent's brief); *see also Kostarev v. Warden of Golden State Annex Det. Facility*, No. 1:26-cv-00046-JLT-HBK (HC), 2026 WL 809931, at *2, *6 (E.D. Cal. Mar. 24, 2026).

The parties disagree on the relief. Respondents urge that petitioner is entitled only to a bond hearing. *E.g.*, Dkt. 19 at 4. Petitioner argues he is entitled to release. *E.g.*, Dkt. 1 at 20; Dkt. 23 at 3.

---

[2] Petitioner "contends that the request for voluntary departure and the waiver of appeal were not knowing and voluntary because they were based on alleged misstatements by the Immigration Judge." Dkt. 17 at 3.

Here, respondents assert petitioner's apparent membership within the *Rodriguez Vazquez* class as a reason for denying his request for release. *E.g.*, Dkt. 19 at 4. Yet potential class membership does not mean a petitioner is automatically ineligible for release. Rather, the petitioner's individual circumstances must be considered.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. at 332. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id*. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether a particular administrative procedure provides the process constitutionally due "generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. at 335.

The Ninth Circuit in *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022), assumed without deciding that *Mathews* three-part test applies in "the immigration detention context." After applying the test, the Court held "1226(a)'s procedures satisfy due process, both facially and as applied to [petitioner]." Even so, the Court expressly stated:

> In so holding, we do not foreclose all as-applied challenges to § 1226(a)'s procedures. "Due process is a flexible concept that varies with the particular

> situation." *See Yagman*, 852 F.3d at 863 (quoting *Shinault v. Hawks,* 782 F.3d 1053, 1057 (9th Cir. 2015)). The government agrees that its position here does not mean detained aliens can never bring as-applied due process challenges to § 1226(a).

*Id*. at 1213-14.

Thus, respondents' generalized reliance on *Rodriguez Vazquez* or matters stemming from it such as *Luengas Alvarado v. Hermosillo*, No. 2:26-cv-00314-TMC, 2026 WL 482465 (W.D. Wash. Feb. 20, 2026), is inapposite. *E.g.*, Dkt. 19 at 4-5.

And other cases asserted by respondents (*e.g.,* Dkt. 19 at 4-5) address distinguishable claims. *Leonardo v. Crawford*, 646 F.3d 1157, 1159 (9th Cir. 2011) (addressing a "prolonged detention" claim); *Populus-Revuelta v. Scott*, --- F. Supp. 3d ----, 2026 WL 1067317, at *2 (W.D. Wash. 2026) (addressing a petitioner detained under 8 U.S.C. § 1226(c)); *Dovlatov v. Hernandez*, 2:26-CV-00826-JNW, 2026 WL 1030454, at *1 (W.D. Wash. Apr. 16, 2026) (addressing a petitioner detained under 8 U.S.C. § 1225(b)).

**A. Private Interest**

As to the first factor, a liberty interest protected by due process "may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty'"; on the other hand, a liberty interest may "arise from an expectation or interested created by state laws or policies. . . " *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005); *Ingraham v. Wright,* 430 U.S. 651, 672-673 (1977). The right to liberty under the Fifth Amendment has been held to be a human right, to include freedom from bodily restraint and punishment. *Rochin v. California,* 342 U.S. 165, 169-170 (1952); *see also U.S. v. Salerno,* 481 U.S. 739, 748-751 (1987) (due process is satisfied if detention decision is based on a finding of future dangerousness when the hearing process includes: defendant is represented

by counsel, the burden is on the government to show future dangerousness by clear and convincing evidence, and there is adversarial testing in a hearing conducted by a neutral judicial officer, with procedural protections that protect the liberty interest of a criminal defendant in the pretrial new arrest phase of the case).

Here, the first *Mathews* factor weighs in petitioner's favor. It is undisputed he has continuously lived in the United States since 2003. In that time, he married (his spouse is a lawful permanent resident), they had four children (all U.S. citizens); petitioner has had a stable employment history. *E.g.*, Dkt. 1 at 10; Dkt. 1-2 at 4, 13.

The Court does not find support for respondents' inference that petitioner's weighty liberty interest is greatly diminished solely because he is a noncitizen in immigration proceedings. *See*, *e.g.*, Dkt. 19 at 4-5. Constitutionally protected interests in liberty are strengthened as noncitizens establish lives in the United States, even without permission from the government to reside here. *Moncebais v. Bondi*, --- F. Supp. 3d ----, 2026 WL 1862153, at *5 n.8 (S.D. Tex. 2026) (citing *Zafra v. Noem*, No. EP-25-CV-541, 2025 WL 3239526, at *4 (W.D. Tex. Nov. 20, 2025) (collecting cases)); *see also Martin v. Memorial Hosp. at Gulfport*, 130 F.3d 1143, 1148 (5th Cir. 1997) (quotation marks and citation omitted) (holding that the Due Process Clause "protects an individual's liberty interest which is viewed as including an individual's freedom to work and earn a living and to establish a home and position in one's community.").

This Court agrees with the reasoning of *Moncebais* that "[i]t follows that liberty interests in freedom from detention increase as other liberty interests, like the freedom to earn a living and establish a home, extend for years without a deprivation by the government." *Moncebais,* 2026 WL 1862153, at *5 n.8.

**B. Risk of Erroneous Deprivation**

The second *Mathews* factor also weighs in petitioner's favor.

No evidence in the record indicates respondents made an individualized custody determination before or contemporaneously with petitioner's June 2026 detention. *See Dos Reis v. McShane*, No. CV 26-3775, 2026 WL 1746649, at *5 (E.D. Pa. Jun. 17, 2026) (ordering release and holding "[a] contemporaneous, individualized custody determination would require ICE to explain why detention, rather than release on conditions, is necessary for this Petitioner. It would also create a record that permits meaningful review of whether the required procedure occurred."). For example, it appears respondents did not provide the Court with their I-213 Form describing the circumstances or basis for petitioner's detention. *See*, *e.g.*, Dkt. 19 at 2-3 (recounting petitioner's detention, citing his Notice to Appear). And there is no allegation petitioner has any criminal history or other similar concerns.

In the bond hearing, the IJ declined jurisdiction without making any flight risk or community danger determination. Dkt. 15-1. In any event, a post-deprivation bond hearing does not necessarily cure an initial due process violation. *See Dos Reis*, 2026 WL 1746649, *3 (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) ("'any post-deprivation review by an immigration judge' is inadequate where ICE failed to conduct an individualized assessment before detention").

Multiple courts have held that 1226(a) requires an individualized custody determination *before* detention. *See, e.g*., *Pastrana-Beltran v. Mullin*, No. 26-CV-2657 (RER), 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026) (". . . section 1226(a) affords [petitioner] an initial custody determination before exercising discretionary detention that

entails an assessment of whether he can demonstrate that he is neither a danger to persons or property, nor a flight risk."); *Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020), *appeal withdrawn sub nom. Velesaca v. Wolf*, No. 20-2153, 2020 WL 7973940 (2d Cir. Oct. 13, 2020) (holding that, before detention "§ 1226(a) and its implementing regulations require ICE officials to make an individualized custody determination"); *Lopez Benitez v. Francis,* 795 F. Supp. 3d 475, 493 (S.D.N.Y. 2025) ("If all noncitizens subject to § 1226(a) could simply be detained on a categorical (or arbitrary) basis without any kind of individualized assessment, it would make little sense to permit such individuals an opportunity to challenge their detention by an appeal before an immigration judge on the basis of specific factors such as dangerousness or flight risk."); *Curimilma Quille v. Blanche,* No. 26-CV-2818 (HG), 2026 WL 1453889 , *4-*5 (E.D.N.Y. May 22, 2026) (holding petitioner was denied due process because ICE's initial custody determination was inadequate and 1226(a) requires an individualized custody determination); *Dos Reis*, 2026 WL 1746649, at *4 (citation omitted) ("The initial [1226(a)] custody determination requires 'an individualized determination as to . . . whether the noncitizen is a danger to property or persons and is likely to appear for any future proceeding.'").

**C. Respondent's Interest**

The third and final *Mathews* factor also weighs in petitioner's favor.

"[T]he government clearly has a strong interest in preventing [noncitizens] from 'remain[ing] in the United States in violation of our law.'" *Rodriguez Diaz*, 53 F.4th at 1208 (quoting *Demore v. Kim*, 538 U.S. 510, 518 (2003)). "[W]e 'must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely

within the control of the executive and the legislature.'" *Id.* (quoting *Landon v. Plasencia*, 459 U.S. 21, 34 (1982)).

"Those legitimate interests, however, support detention only when the Government connects them to the individual detainee," and the "process § 1226(a) contemplates—requiring ICE to make and document a particularized custody determination—imposes no undue burden." *Dos Reis*, 2026 WL 1746649, at *5; *see also E.A T.-B. v. Wamsley,* 795 F. Supp. 3d 1316, 1323-24 (W.D. Wash. 2025) (quoting *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)) ("'If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.'").

## III. CONCLUSION

For the reasons above, the Court **GRANTS** the petition for a writ of habeas corpus **IN PART**[3] and **ORDERS:**

**1)** Respondents shall immediately release petitioner **within 24 hours** of the filing of this Order.

- Upon petitioner's release, respondents may issue appropriate and reasonable conditions of release.

**2)** Respondents shall file a certification with this Court **within two business days** confirming the date and time of petitioner's release.

**3)** Respondents and their respective officers, agents, employees, attorneys, and other persons acting on their behalf are prohibited from re-detaining

---

[3]Because the Court has ordered petitioner's release, the Court need not also consider his claims regarding the medical care he received while in detention.

petitioner unless and until he is provided with adequate notice and a hearing, consistent with due process, before an immigration court to determine whether re-detention is appropriate.

**4)** The Court will consider any post-judgment motion for attorney's fees as requested in the petition.

**5)** Petitioner's TRO motion (Dkt. 2) is **DENIED as moot**.

Dated this 31st day of August, 2026.

Theresa L. Fricke
United States Magistrate Judge